## THOMAS ADAMS *vs.* ROBERT VOSE.

A sheriff, who sells on execution spirituous and intoxicating liquors, the property of a judgment debtor, and is sentenced therefor by a justice of the peace, as for an unlawful sale within *St.* 1852, *c.* 322, § 7, and refusing to pay a fine or give bond, as required by that statute, is duly committed by order of the justice, is not entitled to be discharged on *habeas corpus.*

A coroner is authorized to serve criminal process upon the sheriff.

A warrant to a coroner to commit the sheriff to the county jail, of which and of all prisoners therein the sheriff, by Rev. Sts. *c.* 14, § 82, has the custody, rule and charge, is void; and the sheriff, if held by a coroner under such a warrant, will be discharged on *habeas corpus.*

HABEAS CORPUS. Thomas Adams, sheriff of the county of Norfolk, in a petition presented to this court on the 17th of

March 1854, represents "that he is imprisoned and restrained of his liberty by Robert Vose, a coroner of the county of Norfolk; and the cause and pretence of said detention and imprisonment is a mittimus directed to said Vose, as coroner aforesaid, against said Thomas Adams, issued by Charles M. S. Churchill, Esquire, a justice of the peace for the county of Norfolk, and which mittimus was founded upon a judgment of a court held by said Churchill, a copy of the record of which is hereto annexed."

The record of the justice stated that Adams was brought before him by virtue of a warrant duly issued upon the complaint of Henry A. Walker, charging Adams with having sold to Thomas Burke, at Roxbury in the county of Norfolk, on the 8th of March 1854, a quantity of spirituous and intoxicating liquors, in violation of *St.* 1852, *c.* 322, § 7; and after setting forth the complaint, proceeded as follows: "which complaint being read and heard by the said Adams, he, the said Adams, is asked by me, the said justice, whether he is guilty or not guilty of the offence charged upon him, in the manner and form aforesaid; who stands mute, and offers his execution with his return thereon as a plea of justification in defence thereof, a copy of which is hereto annexed. Whereupon I entered a general plea of not guilty, and after hearing divers credible witnesses, duly sworn to testify the whole truth in relation to the premises, and it thereupon appearing to me that the said Adams is guilty of the offence charged upon him in the aforesaid complaint, it is therefore considered by me, the said justice, that the said Adams pay a fine of ten dollars to the use of the city of Roxbury, and costs of prosecution taxed at ten dollars and fifty cents; and give a bond of one thousand dollars not to violate, for one year from conviction, any law of this commonwealth concerning the sale of spirituous and intoxicating liquors; with which order having failed to comply, he is committed."

Annexed to the record were copies of an execution issued on the 2d of March 1854, upon a judgment rendered in the court of common pleas for the county of Suffolk, in favor of William Smith of Boston, against Michael Concannon of Roxbury, for the sum of one hundred and fifty three dollars and thirty cents

damage, and twenty two dollars and forty eight cents costs; and of the return made thereon by Adams as sheriff, stating that he had levied the same upon certain personal property of Concannon, attached by one of his deputies upon the original writ in that action, and after due notice sold the property by public auction, to certain persons named, for certain sums, amounting in the whole to seventy six dollars and thirty two cents, one item of which was, "two barrels of brandy to Thomas Burke for eighteen dollars and fifty cents"; and after deducting his fees and charges, had applied the balance of the amount so obtained in part satisfaction of the execution.

The petition set forth these facts, and that the justice "issued a mittimus in due form of law, directing said Vose, the coroner of said county, to commit the said Adams, sheriff as aforesaid, to the county jail in Dedham." "Wherefore the said Thomas Adams respectfully prays, being restrained of his liberty for no cause but the performance of his official duty, and that too by a person who could have no legal right so to do, that this court will issue its writ of *habeas corpus* by which said Vose may be required to bring the body of said Adams before this court, and then and there show cause, if any he has, for such illegal imprisonment and detention."

The court ordered that the writ should issue, and that notice thereof should be given to the attorney general, pursuant to Rev. Sts. *c.* 111, § 20.

On the 22d of March, Vose brought the body of Adams into court, and returned on the writ that he held him in his custody, with intent to commit him to Dedham jail, by virtue of the mittimus, a copy of which he annexed. This mittimus, which was addressed "to the coroner of our county of Norfolk, and to the constables of the several towns in said county, and to the keeper of the Commonwealth's jail in said county," commanded them, the said coroner and constables, and each of them, forthwith to convey and deliver into the custody of the keeper of the said jail the body of Thomas Adams, sheriff of the county of Norfolk. The mittimus then set forth the complaint and the proceedings thereon before the justice; and concluded as fol-

5 *

lows: " It is therefore ordered by me, that the said Adams be committed to the common jail in Dedham, in said county of Norfolk, there to remain until he comply with the foregoing order, or be discharged by due course of law. And you, the said keeper, in the name of the commonwealth aforesaid, are hereby commanded to receive the said Adams into your custody in said jail, and him safely keep until he shall comply with said order, or be otherwise discharged by due course of law."

*J. C. Park,* for the petitioner.

*R. Choate,* (Attorney General,) submitted the case without argument on behalf of the Commonwealth.

DEWEY, J. The petitioner insists that he is entitled to his discharge from imprisonment. 1. Because the acts, adjudged by the justice of the peace to have been in violation of the statute of 1852, *c.* 322, § 7, were acts done in the discharge of official duty in the highly important and responsible office of sheriff for the county of Norfolk, and in obedience to the requirements of other statutes of the Commonwealth, commanding him to seize and sell at public auction the property of an execution debtor.

This court is asked, in this summary process of *habeas corpus*, to revise the case heard before the justice, and to reverse his decision as to the guilt of the petitioner in the matter alleged against him in the complaint upon which he was tried. That the petitioner has the right to have the opinion of this court upon any question of law involved in his trial before the justice, is doubtless true. But the inquiry arises as to the proper mode of raising such questions. And we are all of opinion that this court cannot, in this collateral way, revise the case tried before the justice of the peace, and reverse a decision made by him in a matter within his jurisdiction to hear and adjudicate. The question of his authority to receive and act upon such a complaint and to issue a warrant, or to hear the case and adjudicate thereon, may properly be raised on the hearing of this *habeas corpus.* But it is not open to the petitioner to call in question here the correctness of the decision of the justice, as to the sufficiency of the evidence offered to sustain the complaint, or

as to the legal effect to be given to the evidence offered and relied upon in defence; or in other words, to show that, had there been a proper application of the law to his case, he would have been acquitted.[*]

The error of the justice, if there be one, in deciding upon the sufficiency of the evidence, or as to the law applicable to the facts, is to be corrected by an appeal, to be taken by the party aggrieved to the court of common pleas, thus transferring the case to that tribunal, where the further opportunity is allowed of revising the whole case, and having a new adjudication thereon; and if dissatisfied with any rulings of that court in matter of law, the party has the further right to bring the case by a bill of exceptions to this court, where any question of law is to be finally settled; and all this takes place before any fine or forfeiture or punishment can be enforced against the party, unless it appears clearly to the judge presiding in the court of common pleas that the exceptions are frivolous, immaterial, or intended only for delay. These provisions would seem to furnish an adequate remedy for the correction of the errors of the justice who originally tried the case. It is the remedy provided by the statute laws of the Commonwealth, and the mode in which cases of this kind are revised, and erroneous proceedings corrected.

The rule of law on this subject, as we understand it, is this:

---

[*] By *St.* 1854, *c.* 400, passed on the 28th of April 1854, "no sheriff, deputy sheriff, constable or coroner, and no executor or administrator, and no assignee of any insolvent debtor, lawfully appointed according to the acts of this commonwealth for the relief of insolvent debtors, shall be liable to any penalty under any act or law of this commonwealth concerning the manufacture and sale of spirituous and intoxicating liquors; provided his, her or their doings and proceedings are lawfully done, after the passing of this act, pursuant to the lawful order, command, direction, judgment or decree and warrant of any court or other legal tribunal having lawful jurisdiction in the premises; and provided that nothing herein contained shall authorize the sale of any spirituous or intoxicating liquor for any other purposes than are authorized by the act to which this is in addition, or shall authorize any officer, or executor, administrator or assignee, to sell any spirituous or intoxicating liquors, otherwise than by public auction."

If the justice has jurisdiction of the matter or case he is to determine, his decision or final judgment, though erroneous, stands good until reversed by due proceedings, instituted for that purpose in some higher court, and is not to be examined collaterally, as it would be in a proceeding on a writ of *habeas corpus.* This was substantially stated in the opinion of the court at the present term, in the case of *Herrick* v. *Smith,* (*ante*, 49, 50,) but inasmuch as it there appeared on the face of the proceedings that the justice had no jurisdiction, the party was discharged from his imprisonment without any reversal of the judgment of the justice.

But it is strenuously urged here, that the office held by the petitioner is of such a character, that he may come directly to this court to correct the errors of a justice, who has been called upon to adjudicate upon his acts, under a defence involving the legality of acts alleged to have been performed *virtute officii*, and that, if erroneously adjudged guilty of a criminal offence by the justice, he is at once to be relieved from the consequences of such judgment. We are fully aware of the great importance and high responsibility attached to this office; but we are not aware that there is any such peculiar privilege, as is claimed by the counsel for the petitioner for the office of sheriff, of obtaining a reversal of the decision of a justice acting within his jurisdiction, by a direct application to this court to annul it as erroneous in matter of law.

On looking at the record of the proceedings before the justice, we see no reason to question his jurisdiction in receiving the complaint, issuing the warrant, and proceeding to hear and determine the case thus brought before him. The sufficiency of the evidence in the case before the justice to authorize a conviction, and the question of law whether, if the alleged sale was a sale on execution, it was nevertheless an act in violation of the statute of 1852, *c.* 322, § 7, were questions within the jurisdiction of the justice, and are not open to us for revision upon a *habeas corpus.* No appeal having been taken from the judgment of the justice, finding the petitioner guilty of the offence charged in the complaint, that judgment must be taken as a

valid judgment until reversed by writ of error. This ground therefore furnishes no reason for discharging the petitioner from arrest.

2. The next objection urged by the petitioner is, that a coroner of the county of Norfolk is not a competent officer to serve such warrant, and that for this cause the arrest of the sheriff is illegal. The broad ground is taken by his counsel that a coroner is not a competent person to serve the usual processes in criminal proceedings.

The office of coroner is an office of great antiquity, and extensive powers at the common law, principally *quasi* judicial. It is also ministerial, when the sheriff is disqualified by reason of being interested in the suit or other cause, and in such cases the process is served by a coroner. 1 Bl. Com. 346 – 349. 4 Inst. 271.

This office is recognized in our constitution, and in various statutes, to which we may more usefully refer to ascertain the nature and extent of the duties devolved upon this officer within this commonwealth. By the provincial statute of 12 Wm. 3, (Anc. Chart. 351,) " every coroner, within the county for which he is appointed, shall be and hereby is empowered to serve and execute all writs and processes directed to him against the sheriff or marshal of the same county." By the additional act of 3 Geo. 1, (Anc. Chart. 418,) the particular object of which was to authorize coroners to serve processes where the sheriff was plaintiff, as well as where he was defendant, it was enacted that where the sheriff or his deputies might be concerned as plaintiff, complainant, or defendant " in any writ, action or process," the coroner of the county should have power to serve and execute the same. By *St.* 1783, *c.* 43, § 1, it was enacted that " every coroner, within' the county for which he is appointed, shall serve all writs and precepts when the sheriff or either of his deputies shall be a party to the same." Section 97 of *c.* 14 of the Rev. Sts. is substantially similar, with the omission as to service by a coroner when a deputy sheriff is a party. It provides that " every coroner, within the county for which he is appointed, shall serve and execute all writs and precepts, and

perform all other duties of the sheriff, when the sheriff shall be a party or interested in the case."

It is contended on the part of the petitioner that the terms " all writs and precepts " do not include warrants and processes in criminal cases. The word " precepts," it is said, is a word of more restricted import than process. Is this so? Its definition, as found in Webster's Dictionary, is, " In law, a command or mandate in writing." The practice, as well as the statutes, prior to 1783, was that all processes, when the sheriff was a party, might be served by a coroner. By *St.* 1783, *c.* 43, before cited, the phraseology was changed to " precepts," but we have no reason to suppose that this was done to restrict the power of coroners. The words " writs and precepts " were introduced by that statute, and continued in Rev. Sts. *c.* 14, § 97, as words of equally extensive import with the words " writs and processes," as it seems to the court. We are strongly confirmed in this opinion, by finding it to be the same language that is used in Rev. Sts. *c.* 14, § 68, conferring the power on sheriffs and their deputies to serve processes. That provision is thus : " The sheriff, and each of his deputies, shall serve and execute, within his county, all writs and precepts, issued by lawful authority and to him or them directed and committed." Again, as showing that warrants in criminal cases were intended by the legislature to be included in the term " precepts," we refer to the provisions of *c.* 14, § 72, where it is enacted that coroners shall have authority in criminal cases to require suitable aid in the execution of their office in any criminal case, &c. The repeated use of the term " precepts " by Chief Justice Parker, in the opinion given in the case of *Sanford* v. *Nichols,* 13 Mass. 286, fully sanctions the view we have taken of the extended meaning and use of the word " precepts." We have no doubt as to the authority of a coroner to serve criminal warrants and other processes, issuing from a tribunal having competent authority, upon the sheriff. If we were to confine ourselves therefore to the abstract question of the authority of a coroner to serve a warrant on the sheriff in a criminal case, we should hold that such authority does exist.

3. But inasmuch as the right to hold the petitioner in present custody is by the return of the coroner justified under a mittimus issued by the justice after the trial and conviction of the petitioner, the validity of this mittimus is directly brought in question. Although a coroner may have authority to serve all legal precepts when the sheriff is a party, the question is still open whether the present mittimus is such a precept. It is a simple mandate to the coroner to convey Thomas Adams, sheriff of the county, to the county jail in Dedham, there to remain until he should comply with the order of the justice, and a further command to the keeper thereof, to receive said Adams into his custody in the said jail and him safely keep until he should comply with said order. By Rev. Sts. *c.* 14, § 82, it is provided that " the sheriff of each county shall have the custody, rule and charge of the jails therein, and of all prisoners in such jails, and shall keep the same himself, or by his deputy or jailer, for whom he shall be responsible." The mittimus, under which the present arrest was made, was a mandate to the coroner to commit the sheriff to a jail of which the sheriff himself had the custody and control. This was an invalid warrant, as no effect could be given to such an order, nor the party be held in custody as his own prisoner. Such being the case, the law will not justify his imprisonment for the purpose of carrying him to the jail, and the warrant to that effect was invalid. His imprisonment and detention by the coroner appearing to be solely by virtue of the mittimus, a majority of the members of the court are of opinion that the petitioner is wrongfully imprisoned and detained in custody by the coroner, and is entitled to be discharged.

Another interesting question, upon which, as the point does not arise here, we forbear to express any opinion, is as to the power of the magistrate to commit a sheriff, neglecting to comply with an order of such magistrate to pay a fine and costs upon a criminal prosecution against him, to the general custody of the coroner, to be by him kept in imprisonment, not in the county jail. No provision seems to have been made in our statutes for the confinement and imprisonment of a sheriff on a

criminal process against him, except in the single instance of a commitment for contempt of court, in not making due service of a writ of *habeas corpus*, in which case, by Rev. Sts. *c.* 111, § 29, the sheriff "may be committed to the jail of any county other than his own." If the power to commit to the custody of the coroner, with authority to detain in his custody, as a substitute for the county jail, exists, it must be wholly by force of the common law. In the state of New York, in the case of *Day* v. *Brett*, 6 Johns. 22, it was held, in reference to a commitment of the sheriff on civil process, that the coroner was bound by the common law to furnish some other place than the county jail for his imprisonment. As by our statutes, Rev. Sts. *c.* 14, § 73, "no sheriff shall have his body arrested, either upon mesne process, or execution in a civil action," no such question can arise as to a civil action. The case of *Colby* v. *Sampson*, 5 Mass. 310, related to the imprisonment of a deputy jailer on execution, in reference to whom all difficulties, as to his confinement in jail, might at once be obviated by his removal from office by the sheriff. The removal of the sheriff by the governor and council does not obviate the difficulty as to his imprisonment; for by Rev. Sts. *c.* 14, § 84, upon removal "he shall retain the keeping of the jail and of the prisoners therein, until his successor shall be appointed and qualified." But as already stated, this case requires no decision upon that question.

Upon the single ground that this mandate to the coroner, to commit the sheriff of Norfolk to the county jail of Norfolk, was irregular and unauthorized by law, the court are of opinion that the sheriff be discharged from his imprisonment and detention by the coroner.                    *Petitioner discharged.*